IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

WIHO, L.L.C.,

    *Plaintiff,*

vs.

    Case No. 12-CV-1386-EFM-GLR

MATT HUBBAUER,

    *Defendant.*

**MEMORANDUM AND ORDER**

This case arises out of a dispute between Plaintiff WIHO, LLC, a professional ice hockey club, and its former employee, Defendant Matt Hubbauer. Before the Court is Defendant's Motion to Compel Arbitration and Motion to Dismiss the Complaint (Doc. 6). For the reasons set forth below, the Court denies Defendant's motion.

    **I.    Factual and Procedural Background**

**A.    The Collective Bargaining Agreement and Standard Player Agreement**

Plaintiff, a Kansas limited liability company, is the former owner of the professional ice hockey club known as the "Wichita Thunder." The Wichita Thunder is a member of the Central Hockey League ("CHL"). The rights, benefits, and obligations of Plaintiff and the ice hockey players it employed are governed by a Collective Bargaining Agreement entered into between (a) the Professional Hockey Players Association ("PHPA"), which is the exclusive bargaining agent

for the players in the CHL, and (b) the CHL, which is the bargaining agent for clubs in the CHL. The CHL Standard Player Agreement ("SPA"), the agreement between a club and player, is set forth in an addendum to the CBA and is incorporated by reference into the CBA.

Defendant, a Canadian citizen, is a professional ice hockey player and member of the PHPA. Plaintiff and Defendant are parties to an SPA that was effective October 13, 2010. Plaintiff alleges that Defendant made misrepresentations to Plaintiff regarding his prior medical history when he applied to be one of Plaintiff's hockey players, that Plaintiff relied on Defendant's misrepresentations when entering into the SPA, that Defendant's misrepresentations were false and fraudulent, and that Defendant's conduct was to Plaintiff's detriment. Plaintiff filed suit in the District Court of Sedgwick County, Kansas, seeking damages against Defendant in excess of $75,000 and for costs and other relief the court deemed just and equitable. Defendant removed the case to this Court on the grounds that Plaintiff's claim is governed by federal labor law and diversity of citizenship. Defendant now asks the Court to compel arbitration pursuant to the arbitration provisions in the CBA and SPA and to dismiss the Complaint.

## II. Analysis

Federal law favors arbitration.[1] In the famous *Steelworkers* Trilogy,[2] the United States Supreme Court set forth several principles governing the application of arbitration provisions in collective bargaining agreements. These principles were later synthesized and reiterated by the

---

[1] *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

[2] *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564 (1960); *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574 (1960); *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 (1960).

Supreme Court in *AT&T Tech., Inc. v. Communications Workers of America*.[3] The first principle is that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."[4] The second principle is that the question of arbitrability is an issue for judicial determination.[5] The third principle is that, in deciding whether the parties have agreed to submit a particular dispute to arbitration, a court is not to rule on the merits of the underlying claims.[6] And finally, the Supreme Court has stated that there is a presumption of arbitrability and that doubts should be resolved in favor of coverage.[7]

More recently, however, in *Granite Rock Co. v. International Brotherhood of Teamsters*,[8] the Supreme Court held that the presumption of arbitrability does not override the principle that a court may only submit to arbitration " 'those disputes . . . that the parties have agreed to submit.' "[9] The Supreme Court cautioned that the presumption should be applied only "where it reflects, and derives its legitimacy from, a judicial conclusion that arbitration of a particular dispute is what the parties intended because their express agreement to arbitrate was validly formed and . . . is legally enforceable and is best construed to encompass the dispute."[10]

---

[3] 475 U.S. 643 (1986).

[4] *AT&T Tech*, 475 U.S. at 648. (citation omitted).

[5] *Id*. at 649 (citation omitted).

[6] *Id*. (citation omitted).

[7] *Id*. at 650 (citation omitted).

[8] 130 S. Ct. 2847 (2010).

[9] *Granite Rock*, 130 S. Ct. at 2859 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)).

[10] *Id.*

Defendant seeks to compel arbitration under the two arbitration provisions found in the CBA and SPA. First, Article XIX, Section 1 of the CBA states:

> Any Player dispute, controversy, claim or disagreement (1) arising out of or relating to the meaning of this Agreement, and/or (2) arising out of or relating to the Standard Player Agreement or addendum, if any, or any alleged breach thereof, shall be submitted to final and binding arbitration pursuant to the procedure set forth herein. Players' salaries are not subject to arbitration.[11]

Second, paragraph 13 of the SPA states:

> Any dispute arising out of, or relating to, this Agreement or any breach hereof, will first be submitted to final and binding arbitration in accordance with the terms of the CBA. The results of such arbitration proceedings shall be binding upon the parties hereto, and judgment may be entered upon the arbitration award in any court having jurisdiction thereof . . . .[12]

Defendant argues that these arbitration provisions are especially broad and that Plaintiff's claim falls within these provisions because it is based on alleged breaches of the CBA and SPA. Plaintiff disagrees, arguing that the arbitration clauses are narrow and therefore its claim does not fall within their scope. In support of its argument, Plaintiff cites Section 2 of Article XIX of the CBA, which states in part:

> Section 2: Initiation
>
> A. A grievance may be initiated by the PHPA only.
>
> B. A grievance must be initiated within sixty (60) days from the date of the occurrence or non-occurrence of the event upon which the grievance is based, or within sixty (60) days from the date on which the facts of the matter became known or reasonably should have been known to the party initiating the grievance, whichever is later. A Player need not be under contract to a Club at the time a grievance relating to him arises or at the time such grievance is initiated or processed.

---

[11] CBA, Doc. 1-2, p. 28.

[12] SPA, Doc. 1-3, p. 2.

C. A party shall initiate a grievance by filing a written notice by certified mail or fax with the other party. The notice shall specify the alleged action or inaction giving rise to the grievance.[13]

Plaintiff asserts that because the PHPA is the only party who can initiate a grievance, and thus arbitration, Plaintiff's claim does not fall within the CBA's arbitration provision. Furthermore, it asserts that because the SPA refers back to the CBA as the controlling agreement, and the CBA only allows the PHPA to submit a grievance, then there is no provision under the SPA requiring Plaintiff to arbitrate its claim.

The Court agrees. The Supreme Court has held that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."[14] Here, the CBA limits the submission of grievances to the PHPA. Therefore, under the contract, Plaintiff cannot submit its claim to arbitration under the CBA. Furthermore, because the SPA states that "disputes . . . will first be submitted to final and binding arbitration in accordance with the terms of the CBA,"[15] the CBA controls the initiation of arbitration and therefore the PHPA is the only party that can submit a grievance under the SPA.

The Tenth Circuit analyzed a similar arbitration provision in *Reid Burton Construction, Inc. v. Carpenters District Council of Southern Colorado*.[16] In that case, the court determined whether an employer's claim for breach of a no-strike clause in a collective bargaining agreement between the employer and the union was an arbitrable issue under the agreement.[17]

---

[13] CBA, Doct. 1-2, p. 28.

[14] *AT&T Tech*, 475 U.S. at 648 (citation omitted).

[15] SPA, Doc. 1-3, p. 2.

[16] 535 F.2d 598 (10th Cir. 1976).

[17] *Reid Burton*, 535 F.2d at 600-02.

The employer argued it was not required to submit its claim to arbitration because the grievance procedure was limited to the submission of employee grievances.[18] The grievance and arbitration provisions in question in that case stated:

> In the event that a dispute arises involving the application or interpretation of the terms of this agreement, reasonable and diligent effort shall be exerted by the employee with the employer's representative, the employee contacting the business representative through the steward, and/or the business representative with the employer's representative.
>
> If the two parties are unable to reach a settlement, the dispute shall be reduced to writing and *the aggrieved party* shall notify *the other party* the dispute is being referred to a Board of Adjustment.[19]

The Tenth Circuit first examined the grievance procedure outlined in the first paragraph above and found it was ambiguous as to whether employees were limited to filing grievances.[20] The court then analyzed the second paragraph and found that the references to "the aggrieved party" and "the other party" were indicative that either party could initiate the grievance procedure.[21] The Tenth Circuit found that either the employer or the employee could initiate a grievance and thus either party's claims could be subject to arbitration.[22]

Here, Sections 2(b) and 2(c) of Article XIX of the CBA refer to "the party" initiating the grievance and state the measures "the party" must take to bring a timely grievance with notice. Unlike the provisions at issue in *Reid Burton*, however, the CBA is not ambiguous as to who can initiate a grievance. Section 2(a) clearly states that the initiation of a grievance is limited to the

---

[18] *Id.* at 602.

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.*

PHPA. Although Sections 2(b) and 2(c) refer to "the party" instead of the PHPA, Sections 2(b) and 2(c) must be read in conjunction with Section 2(a), which clearly limits the filing of grievances to the PHPA.

Defendant argues that the Court should adopt a South Dakota state court decision in which the court held that a CHL team's claims against a player were subject to arbitration under the Standard Player Agreement and Collective Bargaining Agreement.[23] This Court, however, is not required to follow the decision of a South Dakota state court. Furthermore, Plaintiff failed to attach the Standard Player Agreement described in the South Dakota's state court decision and the Court has no way of knowing whether the arbitration provision in that agreement was the same as set forth in the SPA.

Accordingly, the Court finds that Plaintiff's claim does not fall under the arbitration provisions of the CBA and SPA. Defendant's motion to compel arbitration and dismiss the Complaint is denied.

**IT IS ACCORDINGLY ORDERED** this 15th day of July, 2013, that Defendant's Motion to Compel Arbitration, Motion to Dismiss the Complaint (Doc. 6) is hereby **DENIED**.

**IT IS SO ORDERED**.

*Eric F. Melgren*
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[23] *See Rapid City Prof'l Hockey, LLC v. Grimaldi*, No. 12-231 (S.D. Cir. Ct., March 22, 2012).