## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

WIHO, L.L.C.,

       *Plaintiff,*

vs.

       Case No. 12-CV-1386-EFM-GLR

MATT HUBBAUER,

       *Defendant.*

## MEMORANDUM AND ORDER

This case arises out of a dispute between Plaintiff WIHO, L.L.C., a professional ice hockey club, and its former employee, Defendant Matt Hubbauer. Plaintiff claims that Defendant fraudulently misrepresented and/or concealed certain information regarding his history of concussions to gain employment with Plaintiff. Plaintiff claims that had it been provided Defendant's full medical history, it would not have employed Defendant. Before the Court is Defendant's Motion for Summary Judgment (Doc. 52). For the reasons set forth below, Defendant's motion is granted in part and denied in part.

### I.      Factual and Procedural Background[1]

Plaintiff, a Kansas limited liability company, is the former owner of the professional ice hockey club known as the "Wichita Thunder." The Wichita Thunder is a member of the Central

---

[1]    In accordance with summary judgment procedures, the Court has set forth the uncontroverted facts, and they are related in the light most favorable to the non-moving party.

Hockey League.  Defendant, a Canadian citizen, is a professional ice hockey player who was employed by Plaintiff.

In 2005, prior to his employment with Plaintiff, Defendant suffered a concussion while playing professional hockey for the Columbia Inferno.  The report of one of Defendant's treating physicians, Dr. Evan Ekman, states that he was doubtful Defendant would return to playing hockey.  Defendant was also treated for his concussion by Dr. Anthony Kaufmann, who stated in his report that it would be "potentially dangerous" for Defendant to return to competitive hockey play.[2]

On or about October 3, 2010, just before his employment with Plaintiff, Defendant underwent an orthopedic and medical physical examination performed by the Wichita Thunder's team physician, Dr. Kenneth Jansson, and his staff.  Plaintiff alleges that during the physical, Defendant represented to Dr. Jansson and his staff that he had not had any prior serious head injuries.  After the physical, Plaintiff medically cleared Defendant to play hockey for the 2010-2011 hockey season.

On October 13, 2010, Defendant entered into a Standard Player Agreement ("SPA") to play hockey for Plaintiff during the 2010-2011 season.  Under the SPA, Defendant was obligated to play one hockey season, beginning October 15, 2010, and Plaintiff was obligated to pay Defendant $700.00 per week.  The SPA provides:

> Player understands and recognizes that he is competing with other players for a
> position on the TEAM's roster.  If at any time, in the sole judgment of the TEAM,
> PLAYER's skill and performance under this Agreement has not been satisfactory
> as compared to that of the other players competing for positions in the CHL, then

---

[2]    Kaufmann Report, Doc. 54-2, p. 2.

the TEAM may release PLAYER and immediately terminate this Agreement thereby ending the payments provided herein.[3]

The SPA also states: "Player agrees to report at the time and place fixed by the TEAM and/or CHL in excellent physical and mental condition and to maintain this level of conditioning throughout the term of this Agreement."[4]  With regard to player injury, the SPA states:

> If PLAYER is injured in the performance of his services under this Agreement and promptly reports such injury to the TEAM's physician or trainer, then (1) PLAYER will receive such medical and hospital care during the term of this Agreement as the TEAM's physicians may deem necessary; and (b) PLAYER will continue to receive his weekly salary for the season of injury only and for no subsequent period covered by this Agreement, as PLAYER is physically unable to perform all services required of him under this Agreement because of such injury.[5]

Before signing the SPA, Defendant did not disclose to Plaintiff or Dr. Jansson the opinions of Drs. Ekman or Kaufmann.  Defendant, however, denies being aware of Dr. Ekman's and Dr. Kaufmann's opinions regarding his ability to continue playing competitive hockey.

The SPA incorporates by reference the Collective Bargaining Agreement ("CBA") for the Central Hockey League.  Under the CBA, Plaintiff is obligated to provide all players on the active roster and injured reserve with lodging during the season.  The CBA also required Plaintiff to obtain workers' compensation coverage or provide an equivalent benefit to its players.

On October 15, 2010, Defendant suffered a concussion while playing in a Wichita Thunder hockey game in Tulsa, Oklahoma.  As a result of the concussion, Plaintiff placed Defendant on injured reserve, and Defendant did not play for Plaintiff for the rest of the season. On October 20, 2010, Defendant met with team physician Dr. Richard Leu.  Dr. Leu's dictated

---

[3]     SPA, Doc. 53-2, p. 2.

[4]     SPA, Doc. 53-2, p. 1.

[5]     SPA, Doc. 53-2, p. 2.

report from that appointment noted that Defendant reported three to four previously diagnosed concussions with the last one being several years prior.  On November 10, 2010, Defendant met with team physician Dr. Jansson.  Dr. Jansson's dictated report from that appointment states: "The patient states that he has had a history of concussions.  He has played hockey all of his life. He has had about four concussions from the year 1999 to the year 2004.  He had done well until recently."[6]

Dr. Jansson referred Defendant to Dr. Bart Grelinger.  The dictated report from Defendant's November 11, 2010, appointment with Dr. Grelinger states:  "The patient reports at least four 'real concussions' and multiple other hits of the head where he is uncertain whether he had a concussion or not.  The patient reports he has not missed a game secondary to concussion for the past five years until the recent problem."[7]  Dr. Grelinger's report was sent to Dr. Jansson and Plaintiff.

On April 22, 2011, Defendant initiated a claim for workers' compensation benefits in the Workers' Compensation Court of the State of Oklahoma.  On January 4, 2013, the court awarded Defendant workers' compensation benefits, which included $23,912.00 in compensation for temporary total disability from June 1, 2011, to May 6, 2012, and $17,732.70 for permanent partial disability.  The court also ordered Plaintiff to pay all reasonable and necessary medical expenses incurred as a result of the injury, along with miscellaneous travel expenses and court costs.  Plaintiff appealed the award, and on appeal, the appellate court affirmed the award in part and modified the award in part, reducing the total award for wage compensation to $39,292.70.

---

[6]     Jansson Report, Doc. 53-8, p. 1.

[7]     Grelinger Report, Doc. 53-9, p. 1.

On September 4, 2012, Plaintiff filed suit in the District Court of Sedgwick County, Kansas. Defendant removed the case to this Court on October 15, 2012. Plaintiff alleges that Defendant misrepresented his prior medical history when he applied to be one of Plaintiff's hockey players, that Plaintiff relied on Defendant's misrepresentations when entering into the SPA, that Defendant's misrepresentations were false and fraudulent, and that Defendant's conduct was to Plaintiff's detriment. Plaintiff claims that had it known about Defendant's true medical history before entering into the SPA, Plaintiff would not have employed him and Defendant would not have suffered another head injury. Plaintiff seeks damages of $2,500.00 for housing for Defendant, $16,100.00 in salary to Defendant, $41,368.61 in workers' compensation benefits paid for Defendant, $2,500.00 for Defendant's medical expenses, and attorneys' fees of $15,000.00 incurred in defending the Oklahoma workers' compensation litigation. Defendant now moves for summary judgment on Plaintiff's claim. The Court held a hearing on Defendant's motion on August 6, 2014.

## II.    Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[8] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[9] The movant bears the initial burden of proof and must show the lack of evidence on an essential

---

[8]    Fed. R. Civ. P. 56(c).

[9]    *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

element of the claim.[10]  If the movant carries this initial burden, the nonmovant that bears the burden of persuasion at trial may not simply rest on its pleading but must instead "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.[11]  These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[12]  The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[13]

## III.    Analysis

Defendant makes three arguments in support of his motion for summary judgment.  First, Defendant argues that the Court should grant summary judgment in his favor on Plaintiff's claim because Plaintiff's claim is governed by the terms of the SPA.  Second, Defendant argues that Plaintiff is precluded from recovering the workers' compensation benefits paid to him under the doctrines of collateral estoppel and res judicata.   And third, Defendant argues that Plaintiff cannot recover the attorney's fees it expended in defending Defendant's workers' compensation claim.   The Court will address each of Defendant's arguments below.

### A.    Plaintiff's Theory of Recovery Is Not Barred by the SPA.

Defendant contends that Plaintiff's claim is governed by the terms of the SPA.  Defendant argues that it violates the SPA to allow Plaintiff to take back the benefits that

---

[10]    *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[11]    *Id.* (citing Fed. R. Civ. P. 56(e)).

[12]    *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[13]    *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

Defendant earned and was entitled to under the contract.  Defendant further asserts that even if Plaintiff could establish fraudulent inducement by Defendant, this conduct made the SPA voidable, and because Plaintiff did not terminate the SPA during the contract term, it cannot now seek to void the contract and recover the employment benefits Defendant earned under it.

Plaintiff's response to Defendant's argument has evolved from the time Plaintiff filed its response brief.  Throughout its response brief, Plaintiff argued that it is seeking to rescind the SPA, and, thus it can recover the expenses it incurred under the contract.  At oral argument, however, Plaintiff's attorney stated that he misused the term "rescission" in Plaintiff's brief and that Plaintiff is actually seeking to affirm the contract and recover the damages it incurred as a result of Defendant's alleged fraud.[14]  Plaintiff argues that under Kansas law, it is entitled to affirm the contract even though it was fully performed when it discovered Defendant's alleged fraud.  The Court agrees.

Under Kansas law, a party fraudulently induced to enter into a contract has the right to (1) rescind the contract or (2) affirm the contract, retain the property the party received, and recover damages for the difference in value between what he received and what he should have received.[15]  A party must elect one of these remedies.[16]  It cannot both rescind the contract and affirm the contract and sue for damages.[17]

---

[14]   The Court notes that the Pretrial Order only states that Plaintiff is seeking to recover for fraud.  It does not state whether Plaintiff is seeking to rescind the contract or affirm it and sue for damages.  *See* Pretrial Order, Doc. 50, p. 7.

[15]   *Beneke v. Bankers Mortg. Co.*, 119 Kan. 105, 107, 237 P. 932, 934 (1925); *Nordstrom v. Miller*, 227 Kan. 59, 69, 605 P.2d 545 (1980) (quoting *Beneke*, 119 Kan. 105, 107, 237 P. 932, 934 (1925)).

[16]   *Nordstrom*, 227 Kan. at 69, 605 P.2d at 555 (quoting *Beneke*, 119 Kan. at 107, 237 P. at 107).

[17]   *Id.*

Furthermore, if a party does seek to affirm the contract, partial performance of that contract before discovery of the fraud does not bar a claim for fraud in the inducement. The Kansas Supreme Court has held:

> A party induced by fraudulent representations to enter into a contract which has been partly performed before the discovery of the fraud, does not waive the fraud by an election to affirm the contract, complete its performance and retain what was received under it, and is not precluded from recovering damages sustained by reason of the fraud because of delay if his action is begun within the period fixed by the statute of limitations.[18]

Kansas courts have even extended this principle to allow a party to affirm a contract when it discovers the fraud after the contract has already been completed.[19]

Here, it's not clear from the parties' briefs whether Plaintiff discovered Defendant's prior concussive history during the term of the SPA or after it was completed. Regardless, Kansas law allows Plaintiff to affirm the SPA and sue for the damages it sustained as a result of Defendant's alleged fraud. Defendant has not presented any argument to the contrary. Indeed, Defendant's arguments focus solely on whether Plaintiff has the right to rescind the SPA after it was already completed. Because Plaintiff is not seeking to rescind the contract, the Court denies summary judgment on this issue. Plaintiff's claim will proceed to trial.[20]

---

[18] *Bushey v. Coffman*, 109 Kan. 652, 201 P. 1103, Syl. ¶3 (1921); *see also Oehme v. Oehme*, 10 Kan. App. 2d 73, 74, 691 P.2d 1325, 1326 (1984) ("In *Bushey v. Coffman* . . . the court held that a party to a partially performed contract may affirm it and also sue for fraudulent inducement.").

[19] *See Oehme*, 10 Kan. App. 2d at 73, 691 P.2d at 1326 ("[A] party to a partially performed contract may affirm it and also sue for fraudulent inducement. We see no legally significant difference in that this contract was fully performed.").

[20] The Pretrial Order indicates that the trial docket setting for this case is October 7, 2014. Contrary to the Court's statement during oral argument, this date has not changed, and the Court has given this case a number one civil setting.

**B.  Plaintiff Cannot Recover Defendant's Workers' Compensation Award.**

Defendant argues that Plaintiff is barred from seeking reimbursement of the workers' compensation benefits awarded to him under the doctrines of collateral estoppel and res judicata. " 'The preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute,' 28 U.S.C. § 1738, which 'directs a federal court to refer to the preclusion law of the State in which judgment was rendered.' "[21]  This case involves a prior Oklahoma Workers' Compensation Court case.  Thus, Oklahoma law governs the preclusive effect of the workers' compensation award.

Under Oklahoma law, "[t]he doctrine of collateral estoppel, or issue preclusion, is activated when an ultimate issue has been determined by a valid and final judgment—that question cannot be relitigated by parties, or their privies, to the prior adjudication in any future lawsuit."[22]  "For issue preclusion to apply, the precise question at issue must have been raised and determined in the prior lawsuit."[23]  "The party relying on a claim of issue preclusion bears the burden of establishing that the prior litigation has actually determined the question of fact sought to be precluded.  The test is whether the fact in issue in the second action is a question which was actually determined in the first adjudication."[24]

According to Defendant, the Oklahoma Workers' Compensation Court reviewed the facts and circumstances of Defendant's claim and determined that he was entitled to benefits under

---

[21]   *Brady v. UBS Financial Servs., Inc.*, 538 F.3d 1319, 1327 (10th Cir. 2008) (quoting *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985)).

[22]   *Carris v. John R. Thomas & Assoc., P.C.*, 896 P.2d 522, 527 (Okla. 1995).

[23]   *Reed v. JP Morgan Chase Bank*, 270 P.3d 140, 143 (Okla. 2011).

[24]   *Carris*, 896 P.2d at 528.

Oklahoma law.  Defendant asserts that it is now inappropriate for a Kansas court to re-evaluate an award made by the Oklahoma Workers' Compensation Court.  Plaintiff argues in response that collateral estoppel does not apply because it is asserting a claim for fraud and the Oklahoma Workers' Compensation Court does not have jurisdiction to determine fraud in the inducement. Plaintiff further argues that a prior award of workers' compensation benefits does not preclude a separate tort action to recover for fraud.

The problem with Plaintiff's argument is that the cases it relies on are inapplicable to this case.  Plaintiff relies on *State Insurance Fund v. Asarco, Inc.*,[25] for the principle that the Oklahoma Workers' Compensation Court does not have jurisdiction to determine whether a contract was induced by fraud.  *State Insurance Fund*, however, involved a dispute between a workers' compensation insurance carrier and the insured employer.[26]  The issue before the Oklahoma Supreme Court was whether the workers' compensation court had the jurisdiction to determine coverage disputes between the insurance carrier and the employer.[27]  The court stated that while the workers' compensation court "is vested with exclusive jurisdiction to determine the liability of employers and insurance carriers to claimants under the Workers' Compensation Act," the court does "not have jurisdiction to resolve all issues involving insurance coverage between the insured and the insurer."[28]  The court specifically held that the workers' compensation court did not have jurisdiction to determine whether the insurance contract was

---

[25]   782 P.2d 113 (Okla. 1989).

[26]   *Id*. at 113.

[27]   *Id*. at 114.

[28]   *Id*.

void *ab initio* for fraud in the execution if the invalidity does not appear on the face of the policy.[29]

Unlike *State Insurance Fund*, the dispute in this case is between the employer and employee regarding the employment contract.  There is no third-party insurance company or insurance contract involved.  The Oklahoma Supreme Court did not indicate in its decision whether the Oklahoma Workers' Compensation Court had jurisdiction to determine whether an employment contract was void because of fraud in the inducement, and the Court declines to extend the holding in *State Insurance Fund* to apply to the employment contract at issue in this case.[30]

Plaintiff cites *Hefley v. Neely Insurance Agency, Inc.*,[31] for the principle that a prior award of workers' compensation benefits does not preclude a separate tort action to recover for fraud.  This case involved a dispute between an insurance agent and its client (a business owner who was also the business's sole employee).[32]  The agent procured workers' compensation insurance for the business owner.[33]  After the business owner was injured on the job, he applied for, but was denied, workers' compensation benefits because his policy did not contain the

---

[29]   *Id.* at 115.

[30]   At oral argument, Plaintiff also relied on *H.J. Jefferies Truckline v. Grisham*, 397 P.2d 637 (Okla. 1964), in support of its argument that the Oklahoma Workers' Compensation Court does not have jurisdiction to determine fraud in the inducement.  The Court does not read *Jefferies* to stand for this proposition.  Furthermore, in that case, the Oklahoma Supreme Court held that fraudulent misrepresentation of a prior medical condition does not bar an employee's right to recover workers' compensation benefits under Oklahoma law.  *Id.* at 643.  This is further reason why Plaintiff cannot recover these benefits in this case.

[31]   954 P.3d 135 (Okla. 1998).

[32]   *Id.* at 136.

[33]   *Id.*

-11-

special endorsement required for sole proprietors to be covered under the Oklahoma Workers' Compensation Act.[34]

After the workers' compensation court denied him benefits, the business owner filed a separate contract and tort action in Oklahoma state district court against the insurance agent alleging that the agent failed to disclose the need to obtain a special endorsement to ensure coverage.[35]   The trial court granted the agent's motion for summary judgment and the Oklahoma Court of Appeals affirmed, both holding that the business owner's claim was barred by collateral estoppel or res judicata.[36]   The Oklahoma Supreme Court reversed.[37]   It found that collateral estoppel and res judicata were not applicable because the workers' compensation court did not have the jurisdiction to decide the tort and contract issues asserted in the district court litigation.[38]   The court noted that the workers' compensation proceedings were initiated by the business owner in his capacity as an employee but that the tort action was filed by the business owner in his capacity as an employer.[39]   The court found that, unlike the workers' compensation proceeding, the business owner was seeking damages in tort and contract against his business insurer for the insurer's actions or inactions regarding the issuance of the policy.[40]

*Hefley* is not applicable to this case.   Unlike the business owner in *Hefley*, Plaintiff is not seeking to recover damages that the Oklahoma Workers' Compensation Court did not have

---

[34]   *Id.*

[35]   *Id.*

[36]   *Id.* at 137.

[37]   *Id.* at 138.

[38]   *Id.*

[39]   *Id.* at 137.

[40]   *Id.*

jurisdiction to grant.  Rather, Plaintiff is seeking to recover the exact benefits that the Oklahoma Workers' Compensation Court had the authority to and did award to Defendant in his workers' compensation proceeding.  Therefore, Plaintiff cannot rely on *Hefley* to assert that it is entitled to such award.

The Court finds that collateral estoppel bars Plaintiff's recovery of Defendant's workers' compensation benefits.  The Oklahoma Workers' Compensation Court reviewed the facts of Defendant's claim for workers' compensation and decided, under Oklahoma law, that Defendant was entitled to benefits.  By seeking to recover such award in this action, Plaintiff is essentially asking the Court to reach the opposite conclusion.  The Court declines to do so.  Defendant is therefore entitled to summary judgment on Plaintiff's claim for Defendant's workers' compensation award.[41]

### C.     Plaintiff Cannot Recover Its Attorneys' Fees From the Workers' Compensation Proceedings.

In addition to Defendant's workers' compensation award, Plaintiff also seeks to recover the attorneys' fees it incurred while defending Defendant's workers' compensation claim.  In its response brief to Defendant's Motion for Summary Judgment, Plaintiff claims that it is entitled to such fees because it is seeking to rescind the SPA and had there been no contract between Plaintiff and Defendant, it would not have incurred these fees.

According to Plaintiff's statement at oral argument, Plaintiff is no longer seeking to rescind the SPA.  Regardless, however, of which theory of recovery Plaintiff pursues, it cannot

---

[41] Defendant asserts that in addition to the $41,368.61 in workers' compensation benefits awarded to him, Plaintiff is also barred from recovering the $2,500.00 it paid for Defendant's medical expenses because the Oklahoma Workers' Compensation Court ordered Plaintiff to pay "all reasonable and necessary medical expenses" incurred by Defendant because of his injury.  *See* Workers' Compensation Order, Doc. 53-11, p. 2. The Court agrees, and thus, Plaintiff is also barred from recovering the $2,500.00 it paid for Defendant's medical expenses.

recover its attorneys' fees.  As the losing party, Plaintiff was not entitled to recover its attorneys' fees in the Oklahoma workers' compensation action.  Collateral estoppel thus bars it from recovering them here.  Furthermore, the general rule under Kansas law regarding recovery of attorneys' fees is that " 'in the absence of any contractual or statutory liability therefor, counsel fees and related expenses are not recoverable as an element of damages.' "[42]  Plaintiff has not pointed to any contractual or statutory provisions that would allow it to recover its attorneys' fees from the Oklahoma workers' compensation case.  Therefore, the Court grants Defendant's motion for summary judgment on this issue.

        **IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 52) is **GRANTED IN PART AND DENIED IN PART**.

        **IT IS SO ORDERED**.

        Dated this 29th day of August, 2014.

                                                    *Eric F Melgren*

                                        ERIC F. MELGREN
                                        UNITED STATES DISTRICT JUDGE

---

[42]    *Hawkinson v. Bennett*, 265 Kan. 564, 575, 962 P.2d 445, 456 (1998) (quoting *Wilshire Oil Co. v. Riffe*, 409 F.2d 1277, 1285 (10th Cir. 1969)).

-14-